UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

LAURA WHITE,

    Plaintiff,

      v.

TOWN OF PATTEN; GAIL ALBERT,
individually; and CODY BRACKETT,
individually,

    Defendants.

Civil Action No.

COMPLAINT
JURY TRIAL REQUESTED

    NOW COMES the Plaintiff, Laura White ("Plaintiff" or "Ms. White"), by and through

undersigned counsel, and complains against the Defendants, Town of Patten ("Patten" or the

"Town"), Gail Albert ("Albert"), individually, and Cody Brackett ("Brackett"), individually, as

follows:

INTRODUCTION

    1.      Elected officials and government employees are public servants entrusted by the

people with powers that must be exercised solely for the public good. This case concerns local

government employees who abused the authority of their office by using Town resources for

personal gain, directing Town employees to engage in unlawful conduct for their own benefit, and

using the power of the office to act out on their personal grudges and grievances, namely,

retaliating against the Plaintiff for reporting and opposing these improper actions and engaging in

protected speech under the First Amendment to the United States Constitution.  This abuse of

power violates the United States Constitution and civil rights laws.

1

JURISDICTION & PARTIES

2.    This action arises under the Maine Whistleblowers' Protection Act ("MWPA"), 26 M.R.S. §§831 *et seq.*, as enforced through the Maine Human Rights Act ("MHRA"), 5 M.R.S. §§ 4551 *et seq.*; and 42 U.S.C. §1983 ("Section 1983").

3.    Ms. White is a United States citizen residing in the Town of Patten, County of Penobscot, State of Maine.

4.    The Town of Patten is a municipal government.

5.    The Town of Patten had 15 or more employees during the time that the alleged retaliation occurred.

6.    This Court has subject matter jurisdiction over Ms. White's federal and state claims pursuant to 28 U.S.C. §§ 1331 and 1367.

7.    Defendant Cody Brackett was at all relevant times a Selectman and Chair of the Patten Select Board.

8.    Upon information and belief, the Select Board is the principle legislative and policymaking body of the Town of Patten with final authority over Town governance, including final authority over employment decisions affecting Town employees, including the authority to terminate employment.

9.    Upon information and belief, as Chair of the Select Board, Brackett presided over the Select Board and voted on Select Board actions, including the vote to terminate Ms. White's employment.

2

10.     Brackett is sued in his individual capacity under 42 U.S.C. § 1983 for his personal participation in the deprivation of Plaintiff's constitutional rights. At all relevant times, Brackett acted under color of state law.

11.     Defendant Gail Albert was at all relevant times the Town Manager of the Town of Patten and served as Ms. White's direct supervisor. As Town Manager, Albert exercised day-to-day supervisory authority over Town employees, including the authority to assign and reassign job duties, initiate and conduct workplace investigations, place employees on administrative leave, and recommend employment actions to the Select Board.

12.     Albert is sued in her individual capacity under 42 U.S.C. § 1983 for her direct, personal participation in the deprivation of Plaintiff's constitutional rights.

13.     At all relevant times, Albert acted under color of state law by invoking and exercising the authority of her position as Town Manager to initiate, conduct, and effectuate the adverse employment actions described in this Complaint.

14.     In the alternative to the allegations that the Select Board voted to terminate Ms. White's employment, upon information and belief, Town Manager, Gail Albert had final policymaking authority over employee discipline and termination decisions.

15.     On or about July 18, 2024, Ms. White filed a timely Complaint/Charge of Discrimination against the Town of Patten alleging unlawful retaliation and whistleblower retaliation with the Maine Human Rights Commission ("MHRC").

16.     On or about February 27, 2026, the MHRC issued a Notice of Right to Sue with respect to Ms. White's state law claims.

17.     Ms. White has exhausted her administrative remedies with respect to all claims set forth in this Complaint requiring administrative exhaustion.

JURY TRIAL REQUESTED

18.    Ms. White requests a trial by jury for all claims and issues for which a jury is permitted.

FACTUAL ALLEGATIONS

19.    Ms. White was employed by the Town of Patten as a Deputy Clerk from on or about June 27, 2022 until October 10, 2023.

20.    Ms. White earned $20 per hour.

21.    Ms. White performed her duties well and consistent with the requirements of her job description and applicable law.

22.    Rae Bates is a Selectman on the Town of Patten's Select Board.

23.    Greg Smallwood is a Selectman on the Town of Patten's Select Board.

24.    Cody Brackett is the Chair of the Town of Patten's Select Board.

25.    Upon information and belief, the Select Board is the governing and policymaking body of the Town of Patten with final authority over Town employment decisions, including the authority to approve and vote on the termination of employees. Brackett has held a position on the Select Board at all times relevant to this Complaint.

26.    Gail Albert is the Town Manager for Patten and was Ms. White's direct supervisor.

27.    Penny Daigle was the previous Town Manager for Patten and recently retired.

28.    Matthew Raynes is an attorney for the Town of Patten.

29.    Jeremy Ouellette is a representative for Wolfden Resources, a would-be developer of a proposed mine on Pickett Mountain near Patten.

30.    As part of her training to perform the duties of the Deputy Clerk position, Ms. White completed several trainings between December 2022 and April 2023 on the requirements of

4

Maine laws regarding municipal governance, including but not limited to Maine laws governing municipal officials' actions and conflicts of interest.

31.    Ms. White understood that conflict of interest laws required municipal officials to disclose to the municipal Board and the public their financial and business interests in matters before them, and to recuse themselves from taking a position and voting on matters in which they had an indirect or direct pecuniary interest.

32.    As Deputy Clerk, Ms. White was responsible for keeping the minutes of Patten Select Board meetings in accordance with legal requirements.

33.    Wolfden Resources ("Wolfden") is a development company that explores areas for mining and establishes mines for use by private companies. Wolfden is currently attempting to re-zone segments of Northern Maine in order to create more mines.

34.    Wolfden sought to open a mine on Pickett Mountain near Patten but required Select Board approval in order to do so.

35.    During 2022 and 2023, Wolfden had submitted comments, proposed ordinances and other proposals at multiple meetings of Patten's Select Board.

36.    Ms. White recorded minutes at all of Patten's Select Board meetings and was present for the meetings that Wolfden attended.

37.    In a Select Board meeting on July 19, 2022, Selectman Rae Bates disclosed that another Selectman, Gregg Smallwood, had arranged a meeting between herself and Jeremy Ouellette, a representative for Wolfden.

38.    Bates stated that Ouellette had, among other things, admitted the company was $38,000,000 in debt and had said that he could not guarantee that Wolfden's proposed mining project would meet Maine's clean water standards.

39. Jeremy Ouellette and Wolfden Resources were not present at the July 19, 2022 meeting.

40. Ms. White recorded the participants' statements, including Bates's, in the minutes of the July 19, 2022 Select Board meeting.

41. On August 2, 2022, the Board of Selectmen approved the minutes from the July 19, 2022 meeting.

42. In a letter written in September 2022, and in the Select Board's meeting on September 27, 2022, Wolfden representative Ouellette asked that the minutes of the July 19, 2022 Select Board meeting be amended to include his statements disputing Bates's comments, even though Ouellette had not been present to make any statements during the meeting.

43. On January 10, 2023, the Select Board considered Ouellette's request to amend the minutes of the July 19, 2022 Select Board meeting.

44. Selectman Cody Brackett stated that the Select Board was not permitted to add to minutes of meetings and could only make corrections.

45. Selectmen Cody Brackett, Gregg Smallwood and Dennis Kelly voted to change the minutes of the July 19, 2022 meeting and added Ouellette's proposed statement, even though Brackett had acknowledged that this was not allowed.

46. Ms. White contacted the Maine Municipal Association for legal guidance on the changing of the minutes, as she was concerned that this was against regulations.

47. Maine Municipal Association's attorney stated in an email to Ms. White that it was generally ill-advised to add statements that were not made at the meeting to the meeting's recorded minutes and that corrections were allowed for clear errors in the recorded minutes.

48.     In about April 2023, Ms. White's supervisor, Town Manager Gail Albert, and retired Town Manager Penny Daigle, a consultant for Patten, asked Ms. White to attend a meeting to discuss the Select Board meeting minutes.

49.     Daigle informed Ms. White that the minutes she was keeping were too long and detailed. Ms. Daigle's comments included the recorded discussions about the Wolfden Resources project.

50.     Ms. White explained that she was making detailed minutes because of several concerns, including the legality of certain Select Board members' actions.

51.     Ms. White reported to Albert and Daigle that she believed Selectman Gregg Smallwood had a conflict of interest with the Wolfden proposals that were before the Select Board because he was renting property to Wolfden while he advocated for Wolfden and voted on the company's proposals.

52.     Ms. White informed Albert and Daigle that in a Town public hearing on Wolfden's proposed mine, a resident had asserted that Gregg Smallwood had a conflict of interest but that Smallwood had laughed, said there was no conflict, and stated that they had looked into the possible conflict as a Board.

53.     Ms. White reported that Wolfden was attempting to edit public records and have the minutes of the July 19, 2022 Select Board meeting amended to include a Wolfden representative's statement even though he was not present at the meeting.

54.     Ms. White also reported that the Select Board had ultimately voted to change the minutes of the July 19, 2022 meeting, which she believed was illegal based on the Maine Municipal Association's advice.

55.     Ms. White's reported concerns were made to shed light on and oppose what she had reasonable cause to believe were violations of laws and rules adopted under the laws of the State of Maine and the United States.

56.     Albert and Daigle raised their eyebrows and told Ms. White that changing the minutes was ridiculous. Albert directed Ms. White not to change the meeting minutes.

57.     Ms. White further reported that she believed that members of the Select Board for Moro Plantation were violating Maine law by discussing and deciding matters of town business outside of public meetings.

58.     Ms. White reported concerns were made to shed light on and oppose what she had reasonable cause to believe were violations of laws and rules adopted under the laws of the State of Maine and the United States.

59.     Ms. White knew this was happening because the Chair of the Moro Select Board had told Ms. White about decisions that were made outside of the meetings where Ms. White was required to record the minutes.

60.     Ms. White asked for guidance on what to do going forward, and Albert told her to send any future documentation on to her.

61.     Daigle recommended that Ms. White continue making detailed minutes of controversial topics at the Select Board meetings and that Albert schedule legal training on municipal officials' responsibilities for the Selectmen who had not completed it.

62.     By the conclusion of the April 2023 meeting, Town Manager Gail Albert was directly and personally aware of the following: (a) Ms. White had reported what she reasonably believed to be illegal conflicts of interest by Selectman Gregg Smallwood; (b) Ms. White had reported what she reasonably believed to be an illegal alteration of public meeting records; (c)

Ms. White had reported what she reasonably believed to be illegal governmental action outside of public meetings by Moro Plantation Selectmen; and (d) Ms. White was maintaining detailed meeting minutes as part of her effort to document these concerns.

63.     On Saturday, July 1, 2023, Ms. White sent an email on her personal email account from her personal cell phone to the Maine Land Use Planning Commission ("LUPC") opposing Wolfden's petition to rezone its property on Pickett Mountain to allow mining. Ms. White sent this email outside of her work hours and not pursuant to any duty of her employment as Deputy Clerk.

64.     Among other points, Ms. White stated her opinions and beliefs that Patten and Moro Selectmen voted for resolutions supporting Wolfden's proposed mining operation because they stood to profit from the project; that Selectmen Smallwood and Brackett had financial interests in the proposal because they planned to rent property to Wolfden employees; that the Moro Plantation Selectmen were already renting property to Wolfden employees; and that Selectmen were misleading other residents to believe that they, too, would profit financially from Wolfden's proposed mining operation without any evidence in support of their claims.

65.     Ms. White later learned from LUPC staff that her email of July 1, 2023 was delayed in electronic delivery to the agency by a spam filter until July 24, 2023.  Once released from the spam filter, the LUPC computer system changed the date on Ms. White's email from July 1 to July 24, 2023.

66.     Ms. White's comments, amongst hundreds of others, were published on LUPC's website.

67.     On September 13, 2023, Select Board Chair Cody Brackett, acting in his capacity as a Town policymaker, shared Ms. White's email comments to LUPC on his personal

Facebook page, specifically highlighted Ms. White's statements regarding her opinions about Select Board members' financial interests in Wolfden, and wrote: "Well okay. Seats available. Let's see you do better [wink emoji] best of luck!" By amplifying Ms. White's protected speech on social media and publicly inviting scrutiny of her employment, Brackett directly precipitated the public campaign to terminate Ms. White that culminated at the September 19, 2023 Select Board meeting and the subsequent Select Board vote to terminate her employment.

68.     On September 14, 2023, members of the Select Board of Moro Plantation wrote to Ms. White's supervisor, Gail Albert, and the Patten Select Board. They objected to Ms. White's comments to LUPC and requested that she rescind her comments, not attend the upcoming Moro Town meeting, and step down as Town Agent for Moro Plantation.

69.     On September 15, 2023, Gail Albert told Ms. White that she was asked not to attend the Moro Plantation Town meeting and that she was no longer going to be their Town Agent. Albert removed Ms. White from the Town Agent role in direct response to pressure from Moro Plantation officials who objected to Ms. White's protected speech to LUPC.

70.     Ms. White asked Ms. Albert if this change was because of the email she had sent to the LUPC.

71.     Albert responded: "Of course we will respect your First Amendment right, however, your role and responsibilities in the Town Office may change."

72.     Albert's statement expressly linked Ms. White's constitutionally protected speech to anticipated adverse changes in Ms. White's employment—a direct acknowledgment, by the official who would initiate the termination process and communicate the termination decision, that Ms. White's protected speech was a motivating factor in the adverse employment actions that followed.

73. At Patten's Select Board meeting on September 19, 2023, where Ms. White was present to take minutes, several people discussed her comments to LUPC and her employment. One or more attendees called for Ms. White to be fired.

74. In the September 19 meeting, Dennis Brackett (Cody Brackett's father) read a written statement. He asked whether Ms. White's email was written on Town time and on a Town computer and asserted, incorrectly, that Ms. White's email made false statements about the vote on the resolution supporting the Wolfden project.

75. Dennis Brackett objected to Ms. White's stated opinions about Select Board members' motives and characterized her opinions as a "slap in the face" to the voters of Patten and the Select Board.

76. In the September 19 meeting, resident Barbara Webb stated that she wanted Ms. White to be fired and did not want to see her in the Town Office.

77. Select Board Chair Cody Brackett presided over the September 19, 2023 meeting at which attendees explicitly called for Ms. White's termination on account of her protected speech.

78. Brackett made no effort to halt or redirect discussion of Ms. White's employment; did not state that the content of an employee's protected speech could not be a basis for adverse action; and took no steps to separate the public's retaliatory demands from the Select Board's subsequent employment decision.

79. No other Selectman made any such effort. The Select Board's collective failure to intervene, combined with Brackett's prior act of personally directing public attention to Ms. White's protected speech, established the direct causal path from White's protected expression to the Select Board's vote to terminate her.

Case 1:26-cv-00234-JCN   Document 1   Filed 04/29/26   Page 12 of 27   PageID #: 12

80. On September 20, 2023, when Ms. White arrived at work, Gail Albert informed her that her computer had been taken and was being investigated.

81. Albert said the investigation was because of a personal email that Ms. White sent to a co-worker, Willow, on July 6, 2023, which Ms. White asked her to delete, as is permitted by Maine document retention requirements.

82. Ms. White worked on September 20, 2023 using the Town laptop to type up the minutes of the September 19 Select Board meeting.

83. Ms. White was out of work the following day, September 21, 2023.

84. On September 22, 2023, when Ms. White arrived at work, Gail Albert informed her that she was being put on paid administrative leave pending the results of the investigation of her computer, emails and files.

85. On September 29, 2023, Gail Albert and Patten attorney Matthew Raynes called Ms. White by telephone and questioned her about her computer files, browser history and work emails. Ms. White explained her practice of routinely cleaning out extraneous files and information.

86. On October 4, 2023, Gail Albert called Ms. White and stated the Town was asking that she resign from employment.

87. Ms. White replied that she was not going to resign.

88. On October 4, 2023, Albert notified Ms. White via email about a pre-termination of employment hearing on October 6. The email asserted the following allegations, all of which were false:

    a. Ms. White had refused repeated requests to provide her password for Town systems, when in truth she had done so;

12

b. Ms. White had deleted her browser history and files, when, in fact, she

routinely did so, and there was no policy against doing so; and

c. Ms. White had inappropriately used Town resources by making personal

documents on Town time and Town systems, which was not true, and the

Town had no policy prohibiting doing so.

89. In the pre-termination hearing on October 6, Ms. White responded to and refuted each of the Town's false accusations.

90. In addition, Ms. White raised issues of another employee's practice of routinely accessing other employees' desks, computers and documents, and provided an example of her sharing personnel documents.

91. Gail Albert said nothing in response to Ms. White's statements.

92. On October 6, 2023, Gail Albert called Ms. White by telephone and communicated that the Town had decided to terminate her employment. Albert provided no explanation of the claimed grounds for said termination.

93. Upon information and belief, following the pre-termination hearing, the Patten Select Board voted to terminate Ms. White's employment.

94. Alternatively, upon information and belief, Albert, acting in her capacity as Town Manager, was the final decision-maker with respect to Ms. White's termination and made the decision to terminate Ms. White's employment without a formal vote of the Select Board.

95. Without notifying Ms. White, Albert placed a memo in her personnel file that falsely claimed that her employment was terminated because she had stated she had no Town files in her personal email. Ms. White had never made this statement.

96.    Defendant fabricated the claimed grounds for Ms. White's termination in an attempt to conceal their actual retaliatory motivation and decision to fire her.

97.    Ms. White was terminated because of her private and public statements about illegal actions by certain members of the Select Board.

98.    Defendant discriminated against Ms. White by suspending and then terminating her employment in retaliation for her reports about what she reasonably believed were violations of laws or rules by elected officials, and for her statements of opinion about what she believed to be illegal actions to the public body of the Maine Land Use Planning Commission.

99.    Upon information and belief, the Patten Select Board voted to terminate Ms. White's employment. The Select Board's deliberate vote to terminate Ms. White constitutes official municipal policy.

100.    At the time it voted to terminate Ms. White, the Patten Select Board—including Chair Cody Brackett, who presided—was fully aware of Ms. White's protected activity, including: (a) the Moro Plantation Select Board's written complaint to the Patten Select Board on September 14, 2023, specifically objecting to Ms. White's LUPC email; (b) the public discussion and explicit calls for Ms. White's termination based on the content of her protected speech at the September 19, 2023 Select Board meeting, which Brackett chaired; and (c) Brackett's own September 13, 2023 Facebook post amplifying the content of Ms. White's protected speech and directing public attention to her employment. The Select Board voted to terminate Ms. White with full and direct knowledge of the protected nature of her expression and of the retaliatory public campaign that had been directed against her employment.

101.    There is a direct and proximate causal link between the Select Board's unconstitutional vote to terminate Ms. White and the deprivation of her First Amendment

rights. The Select Board voted to terminate Ms. White after: (a) a public meeting at which explicit calls for her retaliatory termination went unchecked by any Board member; (b) Brackett had personally amplified Ms. White's protected speech on social media six days before that meeting; and (c) Town Manager Gail Albert had conducted a pretextual investigation and presented fabricated grounds for termination at the pre-termination hearing. The fabrication of post-hoc grounds for termination—fully rebutted by Ms. White and then nonetheless inserted into her personnel file—further establishes that the actual and motivating cause of the termination was Ms. White's protected speech.

102.    Alternatively, upon information and belief, Albert, acting in her capacity as Town Manager, was the final decision-maker with respect to Ms. White's termination and made the decision to terminate Ms. White's employment without a formal vote of the Select Board. The precise allocation of termination authority between the Town Manager and the Select Board is a matter peculiarly within Defendants' knowledge. To the extent Albert possessed and exercised final decision-making authority over Ms. White's termination, her decision constitutes the act of the Town of Patten for purposes of municipal liability.

<u>COUNT I: MWPA/MHRA Retaliation</u>

103.    Paragraphs 1-102 are incorporated by reference.

104.    Defendant's conduct violated the MWPA by retaliating against Plaintiff because she engaged in protected activity under the MWPA, as enforced through the MHRA.

105.    Ms. White reported conduct by several Patten Select Board members which she believed was illegal, including them voting on matters where they had a conflict of interest and voting to change meeting minutes in violation of the law in order to benefit the Wolfden project's pending application.

15

106.    Thereafter, Ms. White's criticism of the Select Board members published in her email to the LUPC continued her reports of what she believed was illegal conduct.

107.    In addition, Ms. White's email to the LUPC is speech about public officials and governmental affairs which is protected by the First Amendment

108.    Defendant's suspension, investigation, and firing of Ms. White all qualify as adverse actions under governing law.

109.    The causal connection between Ms. White's  objection to what she believed to be illegal actions by certain select Board members, and her suspension, then termination from employment is supported by the short temporal proximity of less than 6 months between Ms. White's initial reports and her suspension and firing, and less than three weeks between the publication of her email to the LUPC and her suspension and firing.

110.    The circumstantial evidence of complaints about Ms. White's email and demands for her employer to investigate and fire her supports the conclusion that Defendant's actual motivation for putting Ms. White under investigation, suspending, and firing her was retaliatory.

111.    The totality of the evidence supports the conclusion that Defendant took adverse actions against Ms. White in illegal retribution for Ms. White voicing her belief that certain Select Board members were misleading residents and had conflicts due to financial interests in the Wolfden project.

<u>COUNT II – Violation of 42 U.S.C. § 1983 – First Amendment Retaliation</u>

112.    Paragraphs 1 – 111 are incorporated by reference.

113.    The First Amendment to the United States Constitution gives persons a right to freedom of speech and to petition the Government for redress of grievances. 1st Am Const.

114.    The First Amendment prohibits retaliation by a government for an individual exercising protected expressions of speech, association, and the right to petition.

115.    Government employees retain a right to speak as private citizens on matters of public concern, and government employers are prohibited from retaliating against employees for exercising this right.

116.    Ms. White's July 1, 2023 LUPC email was sent on her personal device, from her personal email account, on a Saturday, outside of work hours, and not pursuant to any duty of her employment as Deputy Clerk. Her speech was thus made in her capacity as a private citizen and is entitled to full First Amendment protection. All of Ms. White's reports were matters of public concern.

117.    All of Ms. White's protected conduct addressed matters of substantial public concern, including the integrity of local government officials, compliance with conflict-of-interest and open-records laws, and the propriety of a major state regulatory proceeding before the LUPC.

118.    The rights secured by the United States Constitution are enforceable against state and local governments through 42 U.S.C. § 1983, which provides a right of action against any person who, under color of state law, subjects a citizen to the deprivation of rights secured by the Constitution.

119.    Defendant Town of Patten is a "person" within the meaning of 42 U.S.C. § 1983. The Select Board—the governing body of the Town of Patten with final authority over employment decisions—itself voted to terminate Ms. White. The governing body's own deliberate act is official municipal policy, and the Town is directly liable for that act without resort to delegation or attribution theories.

120. The Select Board voted to terminate Ms. White with full knowledge that her protected speech was the impetus for the public campaign to terminate her. The Board had been directly informed of complaints about Ms. White's LUPC email; had presided over the September 19, 2023 meeting at which attendees explicitly called for her termination based on the content of her protected speech; and included as its Chair the Selectman who had personally amplified Ms. White's protected speech on social media to generate public pressure for her termination. The Select Board acted with deliberate indifference to Ms. White's clearly established First Amendment rights.

121. Alternatively, upon information and belief, to the extent the Town delegated final policymaking authority over employee termination decisions to the Town Manager, Albert's decision to terminate Ms. White constitutes official municipal policy attributable to the Town of Patten. The Town is liable whether the termination decision was made by the Select Board directly or by Albert acting as the Town's delegated final policymaker.

122. Defendant Town of Patten, acting through its governing body under color of state law, violated Ms. White's clearly established First Amendment rights to free speech and to petition the Government when it voted to terminate her employment in direct retaliation for her protected expression.

123. As a direct and proximate result of Defendant's unconstitutional conduct, Ms. White has suffered loss of employment and income, loss of benefits, emotional distress, damage to professional reputation, and other compensatory and economic damages in amounts to be determined at trial. Plaintiff further seeks attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

COUNT III: Violation of 42 U.S.C. § 1983 — (Bracket, Individual Capacity)

18

124.    Paragraphs 1 through 123 are incorporated by reference.

125.    Brackett is a "person" acting "under color of" state law within the meaning of 42 U.S.C. § 1983. At all relevant times, Brackett acted in his official capacity as a Selectman and Chair of the Patten Select Board, exercising the policymaking authority vested in the Select Board as the governing body of the Town of Patten.

126.    Brackett directly and personally participated in the deprivation of Ms. White's First Amendment rights through the following acts, each taken with knowledge of Ms. White's protected expression:

   a.  On January 10, 2023, Brackett voted to change the officially approved minutes of the July 19, 2022 Select Board meeting to add statements by a party not present at the meeting—the very conduct Ms. White had reported as illegal—establishing his personal stake in suppressing Ms. White's reporting of that conduct;

   b.  On September 13, 2023, Brackett, acting as Select Board Chair, publicly broadcast Ms. White's LUPC email on his Facebook page, specifically highlighting her protected speech about Select Board members' alleged financial interests in Wolfden, and wrote a public comment directly inviting scrutiny of her employment, precipitating the public campaign to terminate her;

   c.  On September 19, 2023, Brackett presided over the Select Board meeting at which attendees explicitly called for Ms. White's termination based on the content of her protected speech, and took no steps to halt or redirect that

discussion, to separate the retaliatory public demands from the Board's employment decision, or to protect Ms. White's constitutional rights; and

    d.   Upon information and belief, Brackett voted, as a member of the Select Board, to terminate Ms. White's employment—an affirmative act by a policymaking official, taken with full knowledge of the retaliatory campaign his own conduct had helped to generate.

127. Brackett's personal involvement in Ms. White's termination was not limited to a ministerial vote. Brackett initiated the public retaliatory campaign through his September 13 Facebook post; presided over the meeting at which retaliatory public pressure was applied without intervention; and then voted to terminate Ms. White under those circumstances. This sequence of personally directed conduct establishes direct participation in the constitutional violation.

128. Brackett's retaliatory conduct was a direct and proximate cause of Ms. White's deprivation of First Amendment rights. His September 13, 2023 Facebook post directed public attention to the content of Ms. White's protected speech and generated the retaliatory campaign that culminated at the September 19 public meeting; his conduct at that meeting created the conditions under which the termination vote occurred without corrective intervention; and his affirmative vote to terminate constituted direct participation in the ultimate constitutional injury.

129. Brackett is not entitled to qualified immunity. The right not to suffer adverse employment action in retaliation for protected citizen speech on matters of public concern was clearly established long before September 2023. Any reasonable Selectman in Brackett's position would have known that: (a) publicly amplifying an employee's protected speech in a manner designed to generate retaliatory public pressure on her employment; (b) presiding over a

meeting at which termination was openly demanded on the basis of that protected speech without intervention; and (c) voting to terminate the employee under those conditions, each violated the First Amendment.

130. As a direct and proximate result of Brackett's unconstitutional conduct, Ms. White has suffered loss of employment and income, loss of benefits, emotional distress, humiliation, and damage to professional reputation in amounts to be determined at trial.

131. Plaintiff seeks punitive damages against Brackett in his individual capacity. Brackett personally directed public attention to the content of Ms. White's protected speech to generate retaliatory pressure against her employment; presided over the meeting at which calls for her retaliatory termination went unchecked; and voted to terminate her employment. This conduct demonstrates reckless and callous indifference to Ms. White's clearly established First Amendment rights.

132. Plaintiff further seeks attorneys' fees and costs against Brackett pursuant to 42 U.S.C. § 1988.

<u>COUNT IV: Violation of 42 U.S.C. § 1983 — (Albert, Individual Capacity)</u>

133. Paragraphs 1 through 132 are  incorporated by reference.

134. Albert is a "person" acting "under color of" state law within the meaning of 42 U.S.C. § 1983. At all relevant times, Albert acted in her capacity as Town Manager of the Town of Patten, exercising the supervisory and administrative authority vested in that position by the Town's governing structure. Albert invoked and used her authority as Town Manager to initiate, conduct, and effectuate each of the adverse employment actions described below. Albert is sued in her individual capacity only.

21

135.    The First Amendment to the United States Constitution protects the right of a public employee to speak as a private citizen on matters of public concern, and prohibits a government employer from retaliating against an employee for exercising that right. Ms. White's reports and her July 1, 2023 LUPC email constituted protected citizen speech on matters of public concern.

136.    Albert directly and personally participated in the deprivation of Ms. White's First Amendment rights through the following affirmative acts and deliberate omissions, each taken with personal knowledge of Ms. White's protected expression:

a.    In or about April 2023, Albert was directly and personally informed by Ms. White that she had reported what she reasonably believed to be illegal conflicts of interest by Selectman Gregg Smallwood, illegal alteration of public meeting records, and illegal governmental action outside of public meetings. Albert directed Ms. White to continue documenting these concerns and to forward future documentation to Albert. Albert therefore had personal knowledge of Ms. White's protected activity well before the retaliatory adverse actions that followed;

b.    On September 15, 2023, upon receiving the Moro Plantation Select Board's written complaint objecting to Ms. White's LUPC email, Albert personally informed Ms. White that she was no longer permitted to attend the Moro Plantation Town meeting and that she had been removed from the Town Agent role for Moro Plantation. Albert took this adverse action in direct response to pressure from officials who objected to the content of Ms. White's protected speech;

c.  On September 15, 2023, Albert stated to Ms. White: "Of course we will respect your First Amendment right, however, your role and responsibilities in the Town Office may change." Albert's statement expressly linked Ms. White's constitutionally protected speech to anticipated adverse changes in her employment, demonstrating Albert's personal awareness that her actions were motivated by Ms. White's protected expression;

d.  On September 20, 2023—the day after the Select Board meeting at which attendees publicly called for Ms. White's termination on account of her protected speech—Albert personally informed Ms. White that her computer had been seized and was being investigated. Albert initiated this pretextual investigation in the immediate aftermath of the public retaliatory campaign against Ms. White's protected speech;

e.  On September 22, 2023, Albert personally placed Ms. White on paid administrative leave pending the results of the pretextual computer investigation;

f.  On September 29, 2023, Albert, together with Town attorney Matthew Raynes, personally interrogated Ms. White by telephone about her computer files, browser history, and work emails—areas that Albert used to construct the pretextual basis for termination;

g.  On October 4, 2023, Albert personally called Ms. White and asked her to resign her employment, which Ms. White refused to do;

h.  Albert administered the pre-termination process by presenting the fabricated grounds for termination to the Select Board—grounds that Ms. White had

23

fully rebutted at the October 6, 2023 pre-termination hearing, to which Albert said nothing in response;

i.  On October 6, 2023, Albert personally called Ms. White by telephone and communicated the Town's decision to terminate her employment, providing no explanation of the claimed grounds for termination; and

j.  Upon information and belief, acting as a final policymaker, Albert terminated Ms. White's employment.

137.  Albert's personal involvement in the deprivation of Ms. White's constitutional rights was not limited to ministerial or clerical acts. Albert was the official who received Ms. White's original protected reports in April 2023; who expressly linked Ms. White's protected speech to anticipated adverse employment consequences on September 15, 2023; who initiated the pretextual investigation the day after the retaliatory public meeting; who conducted the investigation and interrogation; who placed Ms. White on administrative leave; who asked Ms. White to resign; who administered the pre-termination hearing and presented fabricated grounds; and who communicated the termination. This continuous sequence of personally directed conduct establishes Albert's direct participation in the constitutional deprivation at every stage from instigation through effectuation.

138.  Alternatively, to the extent Albert was the final decision-maker with respect to Ms. White's termination — rather than a recommender to the Select Board — her personal participation in the constitutional deprivation is even more direct, as she not only initiated, conducted, and administered the retaliatory process but made the ultimate termination decision herself.

139.     Albert's retaliatory conduct was a direct and proximate cause of the deprivation of Ms. White's First Amendment rights. Albert's September 15, 2023 statement expressly connecting Ms. White's protected speech to prospective adverse employment changes; her initiation of the pretextual investigation the day after the retaliatory public meeting; the fabrication and presentation of post-hoc grounds for termination; and her effectuation of each adverse action in the sequence from role removal through termination—establish that Ms. White's protected expression was a substantial or motivating factor in Albert's conduct.

140.     Albert is not entitled to qualified immunity. A government official is entitled to qualified immunity only if the right at issue was not clearly established at the time of the challenged conduct or a reasonable official in the defendant's position could have believed the conduct was lawful. The right of a public employee not to suffer adverse employment action in retaliation for protected citizen speech on matters of public concern was established long before the events described in this Complaint occurred.

141.     Any reasonable Town Manager in Albert's position would have known that: (a) removing an employee from a job assignment in direct response to complaints about the content of her protected speech; (b) expressly linking the employee's protected speech to prospective adverse changes in her employment; (c) initiating a pretextual investigation in the immediate aftermath of a public campaign to terminate the employee for her protected speech; (d) placing the employee on administrative leave, asking her to resign, and presenting fabricated grounds for termination; and (e) effectuating the termination—each violated the First Amendment.

142.     As a direct and proximate result of Albert's unconstitutional conduct, Ms. White has suffered loss of employment and income, loss of benefits, emotional distress, humiliation, and damage to professional reputation in amounts to be determined at trial.

143. Plaintiff seeks punitive damages against Albert in her individual capacity. Albert expressly acknowledged the retaliatory nature of the Town's actions when she told Ms. White that her "role and responsibilities in the Town Office may change" because of her protected speech; initiated a pretextual investigation the day after a public meeting at which calls for Ms. White's retaliatory termination were made; presented fabricated grounds for termination that Ms. White had fully rebutted; and carried out the termination. This conduct demonstrates reckless or callous indifference to Ms. White's clearly established First Amendment rights, or an intentional violation of those rights, warranting an award of punitive damages.

144. Plaintiff further seeks attorneys' fees and costs against Albert pursuant to 42 U.S.C. § 1988.

<u>PRAYER FOR RELIEF</u>

Plaintiff respectfully requests that the Court grant the following relief:

A. Declare the conduct engaged in by Defendants to be in violation of her rights;

B. Order Defendants to reinstate Plaintiff or award front pay to Plaintiff in lieu of reinstatement;

C. Award lost future earnings to compensate Plaintiff for the diminution in expected earnings caused by Defendants' retaliation;

D. Award equitable-relief for back pay, benefits and prejudgment interest;

E. Award compensatory damages in an amount to be determined at trial;

F. Award punitive damages against individual Defendants Cody Brackett and Gail Albert in amounts to be determined at trial;

G. Award nominal damages;

H. Award attorneys' fees, including legal expenses, and costs;

27

I.      Award prejudgment interest;

J.      Grant to Plaintiff such other and further relief as may be just and proper.

Dated: April 29, 2026

/s/ James A. Clifford
James A. Clifford, Esq. (ME Bar No. 8630)

/s/ Andrew P. Cotter
Andrew P. Cotter, Esq. (ME Bar No. 5640)
CLIFFORD & CLIFFORD, LLC
10 Moulton Street, Floor 5
Portland, Maine 04101
Tel. (207) 619-9465
andrew@cliffordclifford.com
james@cliffordclifford.com

*Attorneys for Plaintiff Laura White*